[Cite as *Norman v. Kellie Auto Sales, Inc.*, 2020-Ohio-4311.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Justin Norman, :

    Plaintiff-Appellee, :

                         No. 18AP-32

v. : (C.P.C. No. 17CV-5681)

Kellie Auto Sales, Inc., : (REGULAR CALENDAR)

    Defendant-Appellant. :

---

D E C I S I O N

Rendered on September 3, 2020

---

**On brief:** *Coffman Legal, LLC,* and *Matthew J.P. Coffman*; *Bryant Legal, LLC,* and *Daniel I. Bryant,* for appellee.

**On brief:** *Law Offices of Thomas Tootle Co., LPA,* and *Thomas Tootle*, for appellant.

ON APPLICATION FOR RECONSIDERATION

DORRIAN, J.

{¶ 1} Plaintiff-appellee, Justin Norman, has filed an application for reconsideration, pursuant to App.R. 26(A)(1), of this court's decision in *Norman v. Kellie Auto Sales, Inc.*, 10th Dist. No. 18AP-32, 2019-Ohio-360 ("*Norman*" or "original decision") filed February 5, 2019. For the reasons that follow, we grant Norman's application for reconsideration, vacate the original decision, and affirm the November 30, December 11, 2017, and January 9, 2018 judgments of the Franklin County Court of Common Pleas.

**I. Facts and Procedural History**

{¶ 2} The procedural history and facts of this case were summarized in the original decision.

{¶ 3} Norman purchased a vehicle from defendant-appellant, Kellie Auto Sales, Inc. ("Kellie Auto"). Neither party disputes that Kelli Auto did not inform Norman the

vehicle was a rebuilt salvage. The retail installment contract was executed between the parties for the purchase and financing of the vehicle. As part of the sale, the parties also executed an arbitration agreement authorizing either party to "choose to have any dispute between [the parties] decided by arbitration and not in court of [sic] by jury trial." (Emphasis omitted.) *Norman* at ¶ 3. The agreement also set forth the process for arbitration. Once Norman became aware the vehicle was rebuilt salvage, the parties attempted to negotiate a resolution. Negotiations were not successful and, ultimately, Kellie Auto informed Norman it was invoking the arbitration agreement. A demand for arbitration was completed and submitted. *Id.* at ¶ 7.

{¶ 4} Arbitration was conducted before an arbitrator from the American Arbitration Association. As summarized in the original decision, the arbitrator rendered an award as follows:

> On June 5, 2017, the arbitrator rendered an award in favor of Norman, having found that Kellie Auto had knowingly committed an unfair or deceptive act under the CSPA. Having heard and considered the parties' evidence, the arbitrator awarded $53,911.75 to Norman, a sum that included:
>
> (1) Economic damages – the unrebutted testimony was that [Norman] incurred economic damages in the amount of $7,430. (Down payment, tag fee and loan payments)
>
> (2) Non-economic damages – while [Norman] testified he suffered non-economic damages of aggravation, frustration and humiliation, this testimony was not credible. *Long after [Norman] found out about the salvage title he continued to drive the car.* Early on, [Kellie Auto] offered to rescind the transaction which [Norman] refused. It appears to the Arbitrator that [Norman] held on to his remedy options for an extended period of time for the sole purpose of increasing his recovery. Non-economic damages will not be awarded;
>
> (3) Attorney's fees and costs – [Norman] is entitled to his reasonable attorney's fees and costs for this knowing violation of the CSPA. [Norman] has submitted the affidavits of his attorneys (Ex. 23 and 24) along with the affidavit of Attorney DeRose (Ex. 25) attesting to the reasonableness of the rates submitted. The Arbitrator finds that applying the lodestar approach set forth by the Ohio Supreme Court in *Bittner v. Tri-County Toyota* (1991), 58 Ohio St. 3d 143 an attorney's fees award of $31,494.50 (an extra $1,000 is awarded for post-

hearing work) is appropriate. In addition, hearing fees of $127.25 will be imposed;

(4) The economic damage award shall be trebled to ($7,420 x 3) $22,290 pursuant to *Rev. Code* 1345.09. (See *Pep Boys v. Vaughn*, 2006-Ohio-698 (C.A. 10th 2006). While the Arbitrator may believe that treble damages are not factually justified he cannot apply his personal belief on an appropriate remedy that is not statutorily authorized. Treble damages are to be awarded. *Bierlein v. Alex's Continental Inn*, (1984) 16 Ohio App. 3d 301)

(Sic passim and emphasis added.) (Ex. A at 5-6, attached to Application.) The arbitrator also ordered Kellie Auto to pay $2,400 for the association's administrative fees and $1,500 for the arbitrator's compensation. The arbitrator's award constituted a full, final disposition of all claims submitted.

(Emphasis sic.) *Norman* at ¶ 9.

{¶ 5} After the arbitration, Norman requested and, according to Norman, Kellie Auto's counsel agreed to provide payment to Norman pursuant to the arbitrator's award. However, Kellie Auto retained new counsel and refused to provide payment. Norman then filed an application for judgment and to confirm the arbitration award pursuant to R.C. 2711.09. Kellie Auto was served with Norman's application on June 30, 2017.

{¶ 6} Construing Norman's application, pursuant to R.C. 2711.09, as an "action" under the Ohio's Consumer Sales Practices Act ("CSPA"), and R.C. 1345.092(B), on July 10, 2017 Kellie Auto filed a notice of cure offer with the court and an application to modify the arbitration award pursuant to R.C. 2711.11. Kellie Auto requested the trial court:

"[I]ssue an order modifying and correcting the arbitration award at issue in this action," reducing the award to $9,930 (economic damages of $7,430 and attorney fees of $2,500), plus court costs or, alternatively, "remand this matter to the Arbitrator with instructions that he include an analysis of attorney's fees as required under *Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143 (1991)." (Aug. 4, 2017 Mot. To Modify at 1, 10.)

*Norman* at ¶ 13.

{¶ 7} The trial court denied Kellie Auto's request to modify the arbitration award and granted Norman's application to confirm the award. Kellie Auto filed a motion for relief from judgment. The trial court denied the same. Kellie Auto appealed.

{¶ 8}  On appeal, Kellie Auto raised as its first assignment of error that the trial court erred "when it refused to recognize the Defendant-Appellant's timely exercise of a 'right to cure' pursuant to R.C. 1345.092." *Id.* at ¶ 18.  *Norman* sustained the assignment of error and concluded:

> R.C. 1345.092(A) is clear—a statutory cure offer can be made only after the consumer has commenced an *action* against an act or practice that violates R.C. Chapter 1345. R.C. 1345.092(A). But this statute does not prevent a supplier such as Kellie Auto from attempting to cure the problem with one or more offers to make the buyer whole before any such action, or even arbitration, occurs. That the first and only lawsuit filed by Norman was the action seeking to enforce the arbitration award premised on a CSPA claim does not change the operation of the statutory language of R.C. 1345.092(A) enabling Kellie Auto to make a statutory cure offer.
>
> * * *
>
> We find Kellie Auto's arguments well-taken. In harmonizing the CSPA with Ohio's arbitration statutes, a reviewing court may vacate or modify an arbitration award only as provided for in R.C. 2711.10 or 2711.11, respectively. In its brief, Kellie Auto states no error with the arbitrator's finding of liability, only with the damages awarded:
>
> [Kellie Auto] asserts that the award of damages exceeds the amount allowable following a valid cure offer. R.C. § 2711.11 provides:
>
> "In any of the following cases, the court of common pleas * * * shall make an order modifying or correcting the award upon the application of any party to the arbitration if:
>
> (A) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award..." * * *
>
> A material miscalculation of figures and an evident material mistake exists.  Norman's award must be limited to only that permitted following a timely exercise of the right to cure.  Based upon the foregoing, Kellie [Auto] asks this Court to remand this matter to the trial court to order a modification of the award to $9,930 plus court costs.  This represents actual damages (as determined by the arbitrator) of $7,430 and attorney fees of $2,500 – the maximum permitted by statute.

> (Kellie Auto's Brief at 20-21.) We find Kellie Auto's request for remand for modification appropriate.
>
> Based on the foregoing, we find as a matter of law that the provisions of R.C. 1345.092 were triggered in this matter when Kellie Auto timely filed a cure offer under R.C. 1345.092(A). Accordingly, the common pleas court erred when it refused to recognize as timely Kellie Auto's exercise of a right to cure pursuant to R.C. 1345.092 and to reduce the arbitrator's award in accordance with R.C. 1345.092(G). We remand this matter to the common pleas court to allow Kellie Auto to present to the court its cure offer and to modify the arbitrator's award consistent with this decision. Kellie Auto's first assignment of error is sustained.

*Id.* at ¶ 27, 34-35.

{¶ 9} Norman asks this court to reconsider the court's original decision to the extent it sustained the first assignment of error and reversed the trial court's decision on the same grounds.

## II.  Applicable Law for Reconsideration

{¶ 10} The test applied to an application for reconsideration is whether the motion calls to the attention of the court an obvious error in our prior determination or raises an issue that was not properly considered by the court in the first instance. *Matthews v. Matthews*, 5 Ohio App.3d 140 (10th Dist.1981). We believe the grounds for reconsideration have been met.

## III. Reconsideration and Overruling of the First Assignment of Error

{¶ 11} Norman makes several arguments in support of his objection to the court's original decision sustaining the first assignment of error.  As relevant here, he argues the original decision "created what is tantamount to an appeal right for Appellant when it would otherwise not have any appealable rights under its own legally-binding arbitration agreement which prohibits either party from appealing the arbitrator's decision unless one of three specific events are triggered [and the parties' exclusive remedies] do not include modification of the Arbitrator's award under these circumstances."  (Norman's App. for Reconsideration at 10-11.)  In Norman's merit brief on appeal, he argued Kellie Auto did not seek vacation, modification, or correction through any of the means outlined in R.C.

2711.10 or 2711.11.[1] Norman argued this court "should summarily reject Appellant's radical position and affirm the trial court[,] [and] [t]his Court should not adopt Appellant's alternative, unsubstantiated interpretation to R.C. [2711.10 and 2711.11] by adding language from R.C. 1345.092." (Norman's Brief at 18.)

{¶ 12} We agree with Norman. Although Kellie Auto did not specifically request that the trial court vacate the arbitrator's award, we note that R.C. 2711.10 authorizes a trial court to vacate an award only if:

> (A) The award was procured by corruption, fraud, or undue means.
>
> (B) There was evident partiality or corruption on the part of the arbitrators, or any of them.
>
> (C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

{¶ 13} Kellie Auto did not meet any of the grounds in R.C. 2711.10 for vacating an arbitrator's award.

{¶ 14} Kellie Auto did request the trial court modify the arbitrator's award. R.C. 2711.11 authorizes a trial court to modify an award only if:

> (A) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;
>
> (B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

---

[1] We note the arbitration agreement states that "[a]ny arbitration under this Arbitration Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. sec. 1 et seq.) and not by any state law concerning arbitration." (Arbitration Agreement.) It also reads that "[t]he arbitrator shall apply governing substantive law in making an award." Notwithstanding, both Norman and Kellie Auto support their arguments in their original merit briefs and their briefs regarding reconsideration with references to Ohio law only, not federal law.

(C) The award is imperfect in matter of form not affecting the merits of the controversy.

{¶ 15} In *Norman*, this court found Kellie Auto's request for remand for modification appropriate; however, none of the grounds for modification outlined in R.C. 2711.11 were met. Kellie Auto's claim that modification was required for application of the CSPA cure provisions was not based on any flaw in the arbitrator's decision. Rather, the modification was based on something that happened after the arbitrator issued his decision and award and after Norman applied for confirmation. The Supreme Court of Ohio has stated:

> R.C. Chapter 2711 does not confer authority on an arbitration panel to reconsider its awards. Instead, R.C. Chapter 2711 confers jurisdiction only on the *trial court*, pursuant to R.C. 2711.10 and 2711.11, to vacate, modify or correct arbitration awards. Furthermore, "when the submitted issues are decided, the arbitrators' powers expire. Thus, a second award on a single, circumscribed submission is a nullity." *Lockhart v. Am. Res. Ins. Co.* (1981), 2 Ohio App. 3d 99, 102, citing *Bayne v. Morris* (1863), 68 U.S. 97, 99. *Lockhart* also relied on *Citizens Bldg. of W. Palm Beach, Inc. v. W. Union Tel. Co.* (C.A.5, 1941), 120 F.2d 982, 984, which held, "Arbitrators are appointees with but a single duty and * * * performance of that duty terminates their authority. When an arbitral board renders a final award, its powers and duties under the submission are terminated. Its authority is not a continuing one, and, after its final decision is announced, it is powerless to modify or revoke it or to make a new award upon the same issues." We find this analysis to be well crafted. Accordingly, the arbitration panel, once it entered the award, had no authority to reconsider its decision.

(Emphasis sic.) *Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, ¶ 23.

{¶ 16} Further, in *BIGResearch, L.L.C.,* [*Prosper Business Dev. Co.* Intervenor-appellant] *v. PENN, L.L.C.,* 10th Dist. No. 11AP-855, 2012-Ohio-2992, ¶ 37 ("*Prosper Business*"), we noted that "an arbitrator may not make factual findings with respect to events that occurred after the conclusion of arbitration." *Id.*, citing *Accu-Med Servs., Ltd. v. Omnicare, Inc.*, 1st Dist. No. C-020789, 2004-Ohio-655, ¶ 24.

{¶ 17} Here, no cure offer was made as arbitration proceeded and the arbitrator did not err—requiring vacation or modification—by failing to consider the cure provisions because no cure offer was made for him to assess. The cure offer was made after the

arbitrator's powers expired and he was powerless to modify or revoke his award at the time Kellie Auto made the cure offer. Kellie Auto did not meet any of the grounds for vacation or modification in R.C. 2711.10 or 2711.11. Therefore, we agree with Norman that reconsideration is warranted as application of the CSPA cure provisions in this instance did not meet the grounds for vacation or modification pursuant to R.C. 2711.10 or 2711.11.[2]

{¶ 18} Because we have determined that grounds for modification or vacation were not met, it is not necessary for us to address the merits of the question whether the CSPA cure provisions apply here.

{¶ 19} Accordingly, we grant Norman's application for reconsideration and vacate our decision in *Norman* to sustain the first assignment of error and reverse and remand the trial court decision on those grounds. We now overrule the first assignment of error.

## IV. Affirmation of Original Determination to Overrule the Third Assignment of Error

{¶ 20} In *Norman*, we also addressed Kellie Auto's third assignment of error and determined the trial court did not err when it did not conduct a hearing on Kellie Auto's application to modify the arbitrator's award. We stated:

> Kellie Auto argues a mistake occurred when, on November 30, 2017, the trial court ruled on both Norman's July 11, 2017 application for judgment confirming the arbitration award and Kellie Auto's August 4, 2017 motion to modify the award without first conducting any hearing. Consequently, on December 15, 2017, Kellie Auto filed a motion for relief from judgment pursuant to Civ.R. 60(B) and a motion to stay the execution of judgment pursuant to Civ.R. 62(A).
>
> On January 9, 2018, the trial court issued a decision and entry denying Kellie Auto's Civ.R. 60(B)(1) motion filed

---

[2] Kellie Auto also did not meet the grounds for vacation or modification pursuant to federal law. 9 U.S.C. 10 states an arbitration award may be vacated upon application of any party: "(a)(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. 11 states that an arbitration award may be modified upon the application of any party: "(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award. (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. (c) Where the award is imperfect in matter of form not affecting the merits of the controversy." As noted above, Kellie Auto did not argue that any of these grounds were met and we would also determine that none of these grounds were met.

December 15, 2017, and a decision entry and order denying Kellie Auto's motion to stay filed December 15, 2017. The trial court noted that "Civ.R. 60(B) is a remedial rule to be liberally construed so that the ends of justice may be served." *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 20 (1996), citing *Colley v. Bazell*, 64 Ohio St.2d 243, 249 (1980). The trial court continued:

To prevail on a Civ.R. 60(B) motion, "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc., v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 351 N.E. 2d 113, paragraph two of the syllabus. Furthermore, "Civ.R. 60(B) relief is improper if any one of the foregoing requirements is not satisfied." Boston v. Parks-Boston, 10th Dist. Franklin No. 02AP-1031, 2003-Ohio-4263, ¶ 12-13. Only the first two elements are at issue here.

(Jan. 9, 2018 Decision & Entry at 2.)

The trial court disagreed with Kellie Auto's argument that the language of R.C. 2711.09 and the holding of *Zingarelli v. Lord*, 10th Dist. No. 94APE05-699 (Nov. 17, 1994) required the trial court to hold a hearing on Kellie Auto's Civ.R. 60(B) motion. As we noted in the Facts and Procedural Background portion of this decision, the trial court determined that this Court's decision in [*Victoria's Secret Stores, Inc. v. Epstein Contracting, Inc.*, 10th Dist. No. 00AP-209 (Mar. 8, 2001)] was controlling, and that it obviated the need to conduct a hearing on the motion because Kellie Auto had not requested a hearing.

The trial court found *Epstein* to be controlling because Epstein considered the hearing requirement on motions to amend and/or modify pursuant to R.C. 2711.09 through 2711.11, while concurrently examining the provisions of R.C. 2711.05, Civ.R. 7(B)(2), and Loc.R. 21.01 of the Franklin County Court of Common Pleas, General Division. The trial court continued:

Having determined that Epstein controls, the Court notes that [Kellie Auto] did not request a hearing. *See* White v. Fitch, 2015-Ohio-4387, 2015 Ohio App. LEXIS 4332 (Ohio Ct. App.,

Cuyahoga County 2015) (holding trial court was within its authority to deny the home owners' motion to modify or vacate the arbitration award without a hearing and noting the owner never requested a hearing, and could have made such a request in her initial motion to modify or vacate the arbitration award or in her reply brief). And, this Court did conduct a status conference and a non-oral hearing "utilizing the various memoranda filed in support and opposition to appellees' application to confirm the arbitration award and appellant's motion to vacate or modify the award." Epstein, 2001 Ohio App. LEXIS 827, at * 14. Accordingly, the Court holds under Epstein and Fitch that [Kellie Auto] fails to demonstrate both that [Kellie Auto] has a meritorious defense or claim to present if relief is granted and that [Kellie Auto] is entitled to relief under Civ.R. 60(B)(1). [Kellie Auto's] Motion to Vacate is therefore **DENIED** under Boston.

(Emphasis sic.) (Jan. 9, 2018 Decision & Entry at 4-5.)

We find the common pleas court's reasoning to be sound. Accordingly, the common pleas court did not err by not conducting a hearing on the Kellie Auto's motion to modify the arbitrator's award before denying the motion, especially when Kellie Auto did not specifically request a hearing on its Civ.R. 60(B) motion. Kellie Auto's third assignment of error is overruled.

*Id.* at ¶ 39-43.

{¶ 21} We again adopt these points from *Norman* with respect to Kellie Auto's third assignment of error.

{¶ 22} Accordingly, we overrule Kellie Auto's third assignment of error.

## V.  Overruling of the Second Assignment of Error

{¶ 23} Finally, in *Norman* we declined to address Kellie Auto's second assignment of error, determining it to be moot based on our original sustaining of the first assignment of error and reversal of the trial court on these grounds.  Now that we have reconsidered and vacated our original decision, it is necessary for us to address Kellie Auto's second assignment of error.

{¶ 24} In its second assignment of error, Kellie Auto avers "[t]he lower Court erred when it affirmed [sic] the Arbitrator's award of attorney fees absent a discussion of the

required factors enumerated in *Bittner v. Tri-County Toyota, Inc.* 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991)."[3]

{¶ 25} Specifically regarding attorney fees, *Norman* stated:

On June 5, 2017, the arbitrator rendered an award in favor of Norman, having found that Kellie Auto had knowingly committed an unfair or deceptive act under the CSPA. Having heard and considered the parties' evidence, the arbitrator awarded $53,911.75 to Norman, a sum that included:

* * *

(3) Attorney's fees and costs – [Norman] is entitled to his reasonable attorney's fees and costs for this knowing violation of the CSPA. [Norman] has submitted the affidavits of his attorneys (Ex. 23 and 24) along with the affidavit of Attorney DeRose (Ex. 25) attesting to the reasonableness of the rates submitted. The Arbitrator finds that applying the lodestar approach set forth by the Ohio Supreme Court in *Bittner v. Tri-County Toyota* (1991), 58 Ohio St. 3d 143 an attorney's fees award of $31,494.50 (an extra $1,000 is awarded for post-hearing work) is appropriate. In addition, hearing fees of $127.25 will be imposed;

* * *

(Sic passim and emphasis added.) (Ex. A at 5-6, attached to Application.)

*Id.* at ¶ 9.

---

[3] *Bittner*, at 145-46, stated: "When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B). These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation.

Moreover, the trial court determination should not be reversed absent a showing that the court abused its discretion. 'It is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.' *Brooks* v. *Hurst Buick-Pontiac-Olds-GMC, Inc.* (1985), 23 Ohio App. 3d 85, 91, 23 OBR 150, 155, 491 N.E. 2d 345, 351-352."

{¶ 26} When Kellie Auto filed its application to modify the arbitration award, pursuant to R.C. 2711.11, he requested the trial court "issue an order modifying and correcting the arbitration award at issue in this action" by applying the CSPA cure provisions or, alternatively, "remand this matter to the Arbitrator with instructions that he include an analysis of attorney's fees as required under *Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143 (1991)." *Norman* at ¶ 13. The trial court denied Kellie Auto's motion to modify on November 30, 2017, issuing a final appealable order on December 11, 2017. Regarding attorney fees, the trial court stated:

> The Award specifically states that the 'Arbitrator finds that applying the lodestar approach set forth by the Ohio Supreme Court in Bittner * * * an attorney's fee award of $31,494.50 (an extra $1,000 is awarded for post-hearing work) is appropriate.' (Award at 6.) Clearly, then, the Arbitrator considered and utilized the Bittner factors. This alternative ground is unavailing and Kellie has fallen short of its burden of proving 'the arbitrator committed an error so patent and grave as would have required him to change his award.' [*Warner v. CTL Eng., Inc.*], 9 Ohio App.3d 52, 55, 458 N.E.2d 399 (10th Dist. 1983). As such the Court **DENIES** Kellie's Motion to Modify.

(Emphasis sic.) (Nov. 30, 2017 Decision at 4.)

{¶ 27} Kellie Auto argues the trial court erred in not discussing the factors outlined in *Bittner* and, therefore, it is not possible to determine what factors the arbitrator considered or the weight, if any, it placed on those factors. Kellie Auto argues "[w]ithout such a statement, an *appellate court* cannot conduct a meaningful review * * * [and] '[a] court must give adequate reasoning as to how it arrived at the specific amount of the award.' " (Emphasis added.) (Kellie Auto's Brief at 23, citing *Pack v. Hilock Auto Sales*, 10th Dist. No. 12AP-48, 2012-Ohio-4076, ¶ 16, and quoting *Ridenour v. Dunn*, 10th Dist. No. 03AP-611, 2004-Ohio-3375, ¶ 10.) Kellie Auto further argues " 'in cases where the amount recovered is small compared to the attorney fees assessed, the *court* must give adequate reasoning as to how it arrived at the specific amount of the award.' " (Emphasis added.) (Kellie Auto's Brief at 23-24, quoting *Whitestone Co. v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233, ¶ 60.)

{¶ 28} We overrule Kellie Auto's second assignment of error for several reasons.

{¶ 29} First, in the application to modify and reply brief to Norman's memorandum contra to the application, as well as in the brief before this court, Kellie Auto did not assert any grounds pursuant to R.C. 2711.10 or 2711.11 for a court to vacate or modify an arbitrator's award on the grounds asserted in the second assignment of error. Kellie Auto claims the error by the trial court was failure to discuss *Bittner* factors and failure to include an analysis of the factors required. Kellie Auto does not allege the fee amount was incorrect but, rather, that the procedure used to assess the fees was not proper. Nowhere does Kellie Auto assert: (1) there was an evident material miscalculation of figures or an evident material mistake;[4] (2) the award was upon a matter not submitted to the arbitrator; or (3) the award is imperfect in matter of form not affecting the merits of the controversy. It was not the job of the trial court, nor is it the job of this court, to discern the grounds for modification, if any. *See also Classic Bar & Billiards, Inc. v. Samaan*, 10th Dist. No. 08AP-210, 2008-Ohio-5759, ¶ 17 ("It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.").

{¶ 30} Second, as revealed in its argument in support of the second assignment of error quoted above, Kellie Auto ignores that the role of an arbitrator, trial court, and appellate court when parties pursue arbitration differs from the role of a trial court and an appellate court when parties pursue litigation.[5]

{¶ 31} In *Prosper Business*, we noted that "in agreeing to arbitration, the parties trade the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Id.*[6] at ¶ 52, citing *DePalmo v. Schumacher*

---

[4] In the application to modify, Kellie Auto argued evident miscalculation of figures and evident material mistake as grounds for modification that the arbitrator's award must be limited to only that permitted following a timely exercise of the right to cure. However, in the next section of the application, Kellie Auto asserted no particular grounds, pursuant to R.C. 2711.11 or 2711.10, as the reason for modifying the award for failure to properly assess attorney fees.

[5] Indeed, the Arbitration Agreement drafted by Kellie Auto states "either you or we may choose to have any dispute between us decided by arbitration and not in court or by jury trial." (Emphasis omitted.) (Arbitration Agreement.) It further states "rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights that you and we would have in court may not be available in arbitration." (Emphasis omitted.) (Arbitration Agreement.)

[6] Also relevant here, in *Prosper Business*, at ¶ 52, we recognized, referring to *Bittner*, that "in a civil action in an Ohio court of law, an award of attorney fees is dependent upon the completion of prescribed procedures and analyses, e.g., a lodestar analysis. [But the appellant] has not, however, cited any precedent extending those procedures to arbitrations." Likewise here, Kellie Auto did not cite any precedent extending those procedures to arbitrations.

*Homes, Inc.*, 5th Dist. No. 2001CA272, 2002-Ohio-770, citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985).  The trial court's role on reviewing an arbitrator's award is limited.  Arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator.  *Id.*

{¶ 32} " 'Once an arbitration is completed, a court has no jurisdiction except to confirm and enter judgment (R.C. 2711.09 and 2711.12), vacate (R.C. 2711.10 and 2711.13), modify (R.C. 2711.11 and 2711.13), correct (R.C. 2711.11 and 2711.13), or enforce the judgment (R.C. 2711.14).' " *Champion Chrysler v. Dimension Serv. Corp.*, 10th Dist. No. 17AP-860, 2018-Ohio-5248, ¶ 10, quoting *State ex rel. R.W. Sidley, Inc. v. Crawford*, 100 Ohio St.3d 113, 2003-Ohio-5101, ¶ 22.  " 'A trial court may not evaluate the actual merits of an award and must limit its review to determining whether the appealing party has established that the award is defective within the confines of R.C. Chapter 2711.' " *Id.*, quoting *Telle v. Estate of William Soroka*, 10th Dist. No. 08AP-272, 2008-Ohio-4902, ¶ 9. Because R.C. Chapter 2711 is the method to challenge an arbitration award, "[t]he jurisdiction of the courts to review arbitration awards is thus statutorily restricted; it is narrow and it is limited." *Warren Edn. Assn. v. Warren City Bd. of Edn.*, 18 Ohio St.3d 170, 173 (1985).

{¶ 33} An appellate court's role when reviewing a trial court's determination regarding arbitration is even more limited.  "An appeal may be taken from an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding or from judgment entered upon an award." R.C. 2711.15.  However, because "[a] trial court is precluded from evaluating the actual merits of an award and must confine itself to determining whether the appealing party has established that the award is defective in a manner recognized by R.C. Chapter 2711," on appeal, "the standard of review is further restricted." *MBNA Am. Bank, N.A. v. Jones*, 10th Dist. No. 05AP-665, 2005-Ohio-6760, ¶ 10-11.

{¶ 34} "[W]hen a court of appeals reviews a trial court's judgment concerning an arbitration award, the appellate court must confine its review to evaluating the order issued by the trial court pursuant to R.C. Chapter 2711." *State v. Ohio Civ. Serv. Emps. Assn., Local 11 AFSCME AFL-CIO*, 10th Dist. No. 14AP-906, 2016-Ohio-5899, ¶ 13.  Thus, when "an appeal is taken from an order confirming, modifying, correcting, or vacating an arbitration award, the review is confined to the order and the original arbitration

proceedings are not reviewable." *Robert W. Setterlin & Sons v. N. Mkt. Dev. Auth., Inc.*, 10th Dist. No. 99AP-141 (Dec. 30, 1999), citing *Lockhart v. Am. Reserve Ins. Co.*, 2 Ohio App.3d 99, 101 (8th Dist.1981). "[W]hen reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo." *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, ¶ 26.

{¶ 35} The arbitration agreement here states that an "arbitrator shall apply governing substantive law in making an award." It further states that "[e]ach party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law." (Arbitration Agreement.) The trial court points out, the arbitrator cited *Bittner*—the Ohio applicable law—and considered and utilized the *Bittner* factors. We agree the arbitrator applied governing Ohio law in making the award of attorney fees.

{¶ 36} Third, notwithstanding that it was not the trial court's role to evaluate the merits of the arbitrator's award, and the original arbitration proceedings are not reviewable by the appellate court, we do note that Kellie Auto did not address the award of attorney fees in its post-hearing brief before the arbitrator when he had the opportunity to argue the merits of the arbitrator's award of attorney fees.

{¶ 37} Attached to Norman's memorandum contra to Kellie Auto's application to modify were Exhibits C and D. Exhibit C contained Norman's post-arbitration brief submitted to the arbitrator. Pages 27-32 of Norman's post-arbitration brief address his request for attorney fees and specifically addresses the *Bittner* factors.[7] Attached to

---

[7] In addition to the affidavits and time sheets, Norman also referred the arbitrator to an analysis of the reasonableness of fees. Norman stated in his brief, and we have confirmed in reviewing the record: "In addition to the time records and affidavits Plaintiff's attorneys submitted with the post-arbitration brief, Plaintiff extensively briefed his entitlement to attorneys' fees. (*See* **Exhibit C at 27-32**.) Plaintiff outlined the ten (10) factors used by courts (following *Bittner*) to analyze the reasonableness of attorney fees. *Id.* Additionally, Plaintiff's counsel submitted its well-documented and contemporaneous time reports detailing the amount of time as well as affidavits regarding the number of hours worked and their hourly rates of recompense and argued that, pursuant to *Bittner*, they constitute sufficient evidence of reasonableness to determine the basis of attorneys' fees. *See Bittner*, 58 Ohio St.3d at 145. Further support of Plaintiff's attorneys' rates was submitted using Judge Rubin's 1983 committee's determination of reasonable attorney fee rates that is still currently used by the Southern District of Ohio. Under Judge Rubin's rubric, the rates requested are comparable and Plaintiff included a chart to compare Plaintiff's attorneys' fee rates compared to Judge Rubin's rubric using 1983 rates calculated for 2016 rates and applied a 4% annual cost-of-living allowance to measure the reasonableness of the fees requested. Applying the Rubin Rate as of 2016, the rates for attorney Coffman was $352 per hour and the rate for attorney Bryant is $263 per hour." (Emphasis sic.) (Norman's Memo. Contra Mot. to Modify at 12-13.)

Norman's post-arbitration brief were exhibits 23, 24, and 25—affidavits and detailed time sheets of Norman's attorneys Coffman and Bryant, as well as the affidavit of Attorney DeRose opining on reasonableness of Coffman and Bryant's fees and quality of work; as well as detailed description and breakdown by hours spent of Norman's counsels' work on his behalf. Exhibit D contained Kellie Auto's post-arbitration brief. Kellie Auto's post-arbitration brief states simply that Norman is not entitled to attorney fees, but does not address the reasonableness of Norman's counsels' fees or work or any of the *Bittner* factors. Nor does it complain that the arbitrator did not analyze the request for attorney fees award pursuant to Bittner.

{¶ 38} In *Bittner*, the Supreme Court observed that " '[i]t is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.' " *Id.* at 146, quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985). The same reasoning applies here to the arbitrator. The arbitrator, who participated in the arbitration and preliminary proceedings leading up to the arbitration, had an infinitely better opportunity to determine the value of services rendered by the lawyers who arbitrated before him than the trial court asked to modify the award and more so than the appellate court asked to review the trial court's confirming of the award and denial of the motion to modify the award.

{¶ 39} Taking all these factors into consideration, including the trial court's limited role in considering applications to confirm and modify an arbitrator's award, as well as our own limited role in reviewing the trial court's decisions, we cannot say the trial court clearly erred or abused its discretion in confirming the arbitrator's award and amount of attorney fees and denying Kellie Auto's application to modify the same.

{¶ 40} Accordingly, we overrule Kellie Auto's second assignment of error.

{¶ 41} Finally, we note that on December 12, 2018, Norman filed a motion for post-arbitration attorney fees and costs with the trial court. Norman requested the trial court provide an opportunity to request additional attorney fees and costs incurred as part of

post-judgment collection efforts given Kellie Auto's continued refusal to pay the amounts recovered in this dispute. On January 9, 2019, the trial court denied Kellie Auto's motion to vacate judgment, pursuant to Civ.R. 60, and motion to stay. Although the trial court did not expressly rule on Norman's motion in the January 9, 2019 entry, we construe the trial court's silence as a denial of the same. *See State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998) (holding that an appellate court ordinarily presumes that a trial court denied a motion when the trial court fails to explicitly rule on the motion). In his original merit brief, Norman requested the order remand to the trial court solely to determine the additional attorney fees and costs incurred resulting from Kellie Auto's unnecessary and avoidable conduct following its refusal to pay the award. Norman did not, however, raise this as an assignment of error.[8] Furthermore, the trial court did affirm the arbitrator's award of an extra $1,000 for post-arbitration work. Therefore, we decline to remand this case to the trial court to consider any additional post-arbitration attorney fees.

## VI. Conclusion

{¶ 42} For the foregoing reasons, we grant Norman's application for reconsideration and vacate the original decision. We overrule the first assignment of error. Consistent with the original decision, we overrule the third assignment of error. Further, we overrule the second assignment of error. Norman's motion to supplement the record is moot. The judgments of the Franklin County Court of Common Pleas are affirmed.

*Reconsideration granted;*
*original decision vacated; judgments affirmed.*

NELSON, J., concurs.
BRUNNER, J., dissents.

NELSON, J., concurring.

{¶ 43} I concur fully in the decision of the court.

{¶ 44} Reconsideration is warranted particularly because the original panel decision, it seems to me, altered two important Ohio statutes: the Arbitration Act (by ruling that a court can and must modify an arbitrator's decision based on conduct a party undertakes after the arbitration award has issued) and the CSPA (by permitting what the

---

[8] Pursuant to App.R. 16, "[the court] do[es] not determine appeals based on mere arguments and may dismiss any arguments not specifically included in an assignment of error." *Curry v. Columbia Gas of Ohio, Inc*., 10th Dist. No. 19AP-618, 2020-Ohio-2693, ¶ 14.

decision itself called "potential abuses" whereby a supplier can circumvent the result of its own arbitration contract and escape the treble damages and attorney fees the Act provides when no cure has been offered before final determination, *compare Norman,* 2019-Ohio-360, at ¶ 33). We should avoid starting down either path.

{¶ 45} As we now affirm, a common pleas court "shall grant" a timely application for confirmation of an arbitration award "unless the award is vacated, modified, or corrected as prescribed in" R.C. 2711.10 and 2711.11. R.C. 2711.09. The court can vacate the arbitration award only if it was procured by fraud, or the arbitrator displayed "evident partiality or corruption" or was guilty of procedural misconduct or exceeded his or her powers "or so imperfectly executed them that a mutual, final, and definite award" was not made. R.C. 2711.10. And a court may modify an arbitration award only if "[t]here was an evident material miscalculation of figures or an evident material mistake" in a description in the award, or the award was on a matter not submitted to arbitration or the award was "imperfect in matter of form not affecting the merits of the controversy." R.C. 2711.11.

{¶ 46} Here, our earlier decision found "Kellie Auto's request for remand for modification appropriate," 2019-Ohio-360, at ¶ 34, but not on the basis of any of the exclusive grounds for modification specified in R.C. 2711.11. Indeed, the basis for the ordered modification does not relate to any claimed flaw at all in the arbitrator's decision; the arbitrator apparently made no miscalculation of figures or mistake in describing the award, which was not imperfect in form, and the matter had been submitted to him. The modification was ordered on the strength of something that happened well after the award issued and after Mr. Norman had applied for confirmation. But the structure and text of Ohio's arbitration statutes do not countenance such after the fact tinkering. "For a dispute resolution procedure to be classified as 'arbitration,' the decision rendered must be final, binding and without any qualification or condition as to the finality of an award whether or not agreed to by the parties. The decision may only be questioned pursuant to the procedure set forth in R.C. 2711.13 [regarding a motion to vacate, modify, or correct an award] on grounds enumerated in R.C. 2711.10 and 2711.11." *Schaefer v. Allstate Ins. Co.,* 63 Ohio St.3d 708, 711 (1992).

{¶ 47} Contrary to the suggestion of our earlier decision here, I do not think that we "harmoniz[e]" the arbitration statutes with the CSPA by ignoring or interpreting away the plain text of R.C. 2711.11 regarding the limited grounds for modifying an arbitration award.

*Compare* 2019-Ohio-360, at ¶ 34 (further positing that arbitrator made a "material miscalculation" in arbitration award by not prognosticating post-award cure offer). And observing the terms of the arbitration statutes as written does not strip suppliers of the protections provided by the "cure" provisions of the CSPA. For starters, arbitration in this context is available and binding only if both parties agree to it—just as Kellie Auto did here, through contract language it drafted and then agreed to and then invoked providing that " 'any claim * * * which arises out of or relates to * * * [the] purchase or condition of this vehicle * * * shall, at your or our election, be resolved by * * * binding arbitration and not by court action.' " *See* 2019-Ohio-360, at ¶ 3, quoting arbitration agreement. Kellie Auto acknowledges that it "was the first to raise the existence of an arbitration clause. The purpose of doing so was to remind the Plaintiff that this matter would ultimately be decided by arbitration. It was." Answer in Opposition to Motion for Reconsideration at 8. Just so.

{¶ 48} Moreover, there can be no argument here that the arbitrator ignored the law in failing to consider CSPA cure provisions, because Kellie Auto made no cure offer for him to assess. The parties proceeded through arbitration, an award was issued, and Mr. Norman had applied for confirmation before Kellie Auto advanced its offer. *Compare* 2019-Ohio-360, at ¶ 23 (quoting Kellie Auto on the "historical backdrop" of the CSPA as designed to provide " 'opportunity to cure violations before protracted litigation' "). Therefore, and as noted in the decision above, we need not reach and we decline to catalogue what hypothetical procedural permutations could permit a valid CSPA cure offer in the arbitration context; it would be for arbitrators in appropriate cases, and not for an advisory opinion of this court, to decide in the first instance whether a particular cure offer would have effect in a particular circumstance being arbitrated by agreement. In any event, the language of the CSPA indicates that any operative cure offer must precede any final award in binding arbitration. The notice that must accompany a cure offer for it to have effect, for example, is to recite in part that "[r]ejection of this cure offer could impact your ability to collect court costs and legal fees. *If* * * * [an] arbitrator finds in your favor, but does not *award* you an amount more than the value of the supplier's remedy, the supplier will not be responsible for treble damages, attorney's fees, [etc.]"; the statute also specifies that "*[i]f* * * * [an] arbitrator awards actual economic damages * * * that are not greater than the value of a supplier's remedy included in a cure offer made pursuant to this section, the consumer shall not be entitled to * * * *[a]n award* of treble damages * * *." R.C.

1345.092(D)(2) and (G)(1) (emphasis added). Both the word "if" and the references to an "award" (with all its attendant confirmation provisions) signal in this context that the arbitrator's ruling is envisioned prospectively, not retrospectively. To the same effect, I myself do not read the statutory predicate for a right to cure (requiring an "action seeking a private remedy *pursuant to section 1345.09* of the Revised Code," *see* R.C. 1345.092(A) (emphasis added)) to encompass an application made *pursuant to R.C. 2711.09* to confirm an arbitration award (an application that the court "shall grant" absent specified circumstances for vacating, modifying, or correcting it, *see* R.C. 2711.09).

{¶ 49} A proper understanding of both the Arbitration Act and of the CSPA, it seems to me, or of either one, avoids the "potential abuses" conceded by our initial decision that would come with judicially rewriting an arbitration award for "a supplier [who] could insist on arbitration, refuse to pay, force a court action, and [then] make a cure offer * * * that is the same as or just higher than the economic damage amount awarded by an arbitrator * * *." 2019-Ohio-360, at ¶ 33. The initial decision concluded that such rewriting "appears to be how the legislature intended for the CSPA to work," *id.*, but I find nothing in the legislative language to suggest that the General Assembly intended to reward such gamesmanship on the part of CSPA violators by amending the arbitration statutes. And while Kellie Auto hints that it considers selling rebuilt salvage to an unsuspecting buyer without notice to be "a merely technical violation of the CSPA," *see* Answer in Opposition to Motion for Reconsideration at 7, I do not believe that anything here turns on that questionable characterization.

{¶ 50} I entirely concur in granting reconsideration, in vacating our original decision, in overruling Kellie Auto's assignments of error, and in affirming the judgments of the Franklin County Court of Common Pleas.

BRUNNER, J., dissenting.

{¶ 51} I respectfully dissent from the majority decision and concurring decision on reconsideration of *Norman v. Kellie Auto Sales, Inc.*, 10th Dist. No. 18AP-32, 2019-Ohio-360 ("*Norman*" or "original decision"). The majority in its two decisions has not specifically pointed out under the standard for reconsideration of a prior appellate decision either that which is an obvious error under the law, or an issue that was not properly considered at all

by the court in the first instance.  Instead, the majority states in only the majority decision, "[w]e believe the grounds for reconsideration have been met."  (Majority decision at ¶ 10.)

{¶ 52} The majority decision contains a cite to the 1981 case of *Matthews v. Matthews,* 5 Ohio App.3d 140 (10th Dist.1981), as authority for the standard of review on reconsideration.  However, a more recent statement of that standard is:

> An application for reconsideration is not intended for cases in which a party simply disagrees with the reasoning and conclusions of the appellate court. *Drs. Kristal & Forche, D.D.S., Inc. v. Erkis*, 10th Dist. No. 09AP-06, 2009-Ohio-6478, ¶ 2, citing *State v. Owens*, 112 Ohio App.3d 334, 336, 678 N.E.2d 956 (11th Dist.1996). An application for reconsideration will be denied where the moving party "simply seeks to 'rehash the arguments' " presented in the initial appeal. *Appenzeller v. Ohio Dept. of Rehab & Corr.*, 10th Dist. No. 17AP-747, 2018-Ohio-1698, ¶ 4, quoting *Garfield Hts. City School Dist. v. State Bd. of Edn.*, 85 Ohio App.3d 117, 127, 619 N.E.2d 429 (10th Dist.1992). *Thus, if an application for reconsideration does not raise an issue that either was not considered at all or was not fully considered, nor demonstrates the court made an obvious error or rendered a decision unsupportable under the law, it should not be disturbed.* [*State v.*] *Harris*, [10th Dist. No. 13AP-1014, 2014-Ohio-672,] ¶ 8.

(Emphasis added.)  *Hal v. State Dept. of Edn.*, 10th Dist. No. 18AP-301, 2020-Ohio-204, ¶ 2.  My point here is that the majority decision should educate the reader (1) under what standard is it essentially reversing itself on reconsideration, especially with a new panel of judges, and (2) how it is applying such a standard, demonstrating that the previous decision was unsupportable under the law or that a particular issue was not at all considered in the earlier decision.   I do not believe it has done that here, and thus, procedurally, reconsideration is not warranted.

{¶ 53} Second, in the interest of brevity and finality for the parties, I reiterate and incorporate the substantive holding in *Norman* as the substantive basis for my dissent, as that decision reviews an application, to the facts of this case, of the statutes in question—the Ohio Consumer Sales Practices Act and the state's statutes on arbitration.  Our prior review of the application of those two statutes to the facts at hand in this case is one that is supportable under the law and thus not subject to reconsideration, according to *Hal*, whether or not it reaches a desirable result.

{¶ 54} In my view, the statement of the law in our original decision, is as the legislature intended for amendments to the Consumer Sales Practices Act to apply in conjunction with its arbitration statutes. If the result should be better, it is up to the legislature to repair its language. It is not for us to construe or re-construe it in an effort to improve it. To strain our analysis to reach a different conclusion on reconsideration knee caps predictability of case precedent in our district and takes us outside our jurisdiction as set forth in Ohio Constitution, Article IV, Section 3(B)(2), which provides that our jurisdiction is "as [is] provided by law."

{¶ 55} When interpreting statutes, we must first apply their plain meaning:

> Unambiguous statutes are to be applied according to the plain meaning of the words used, *Roxane Laboratories, Inc. v. Tracy* (1996), 75 Ohio St. 3d 125, 127, 661 N.E.2d 1011, 1012, and courts are not free to delete or insert other words, *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St. 3d 217, 220, 631 N.E.2d 150, 153.

*State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997). Moreover, a court must read all statutes relating to the same general subject matter together to give proper force and effect to each one. *In re Duke Energy Ohio, Inc.*, 150 Ohio St.3d 437, 2017-Ohio-5536, ¶ 27.

{¶ 56} I believe the first decision in this matter in *Norman*, based on the plain meaning of the Consumer Sales Practices Act and the state's arbitration statutes, gives effect to both. If the legislature did not intend such an outcome, it is incumbent on the legislature to modify its statutes and not on us to modify our decision on reconsideration, especially when the decision in the matter does not bear obvious error and is supportable under the law.

{¶ 57} Finally, I respectfully point out that both the majority and concurring decisions vacate this Court's prior decision in *Norman* via reconsideration. But such action is neither authorized nor supported under App.R. 26, because nowhere in the Rules of Appellate Procedure are we authorized to vacate our own decisions. Perhaps interlocutory, non-final orders may be vacated, but no such authorization appears in the appellate rules for applications for reconsideration.

{¶ 58} I submit that this Court has no authority under the Rules of Appellate Procedure to vacate its own decisions and judgments on reconsideration.[9] *And in the past, as noted in footnote 1, we have reconsidered decisions without having vacated them.* In civil cases, only language in the appellate rules relating to en banc consideration discusses the vacating of an earlier decision and that language is somewhat moot, since App.R. 26(B) does not now require a decision to be vacated "in the event of a sua sponte decision to consider a case en banc." App.R. 26, Staff Note (July 1, 2012 Amendment). This Court should have simply reconsidered its decision and not vacated the earlier decision, and to do this is error.

{¶ 59} It is for these reasons that I respectfully dissent from the majority decision and concurring decision, constituting a majority of the panel on reconsideration.

---

[9] App.R. 26(A)(1) is silent about what an appellate court should do in the event it reconsiders a prior decision, and this district has been inconsistent in what it does. *See State v. Wade*, 10th Dist. No. 06AP-644, 2008-Ohio-1797, wherein we reconsidered our decision without vacating it, and *Grothaus v. Warner*, 10th Dist. No. 08AP-115, 2008-Ohio-6683, wherein we reversed part of an earlier decision without vacating it. *See also State v. Morris*, 10th Dist. No. 10AP-512, 2011-Ohio-5484, ¶ 8, wherein we stated, "[w]e find that reconsideration is proper because we admittedly relied, in part, upon a concession that was withdrawn. Accordingly, we grant appellee's application. This decision shall therefore replace the decision rendered in [*State v. Morris*, 10th Dist. No. 10AP-512, 2011-Ohio-2226]." *But compare Spitznagel v. State Bd. of Edn.*, 10th Dist. No. 07AP-757, 2008-Ohio-6080, ¶ 11, where we vacated an earlier decision that was no longer supportable by law because of a Supreme Court of Ohio decision that was decided the same day as the decision that was reconsidered.